23-5007 United States v. Pearce, and do we have both counsel on that here? Okay, exciting travel times. It is your honor, and may it please the court, my name is Ryan Villa, I represent the appellant, Thomas Pearce, and thank you for readjusting the schedule today due to our travel difficulties. We're asking that the court reverse the district court's determination that the stop of Mr. Pearce's vehicle by Corporal Gallaudet was justified by reason of suspicion. It was not. The information that Corporal had at the time he executed the traffic stop was all innocent information, and even when you compile it together, it remains innocent. It doesn't rise to the level of reason of suspicion. Counsel, can I direct you to one place where I'm stuck, and that is how we should be thinking about the flight in the totality, and district court seemed not to think that that was the most important part of this inquiry. Could you speak to how we should be thinking about flight here? Yes, and I think you should think about it nuanced. I mean, the court is reviewing the district court's conclusions about how the flight impacted the reason of suspicion, and the case law is clear that it's this particular type of flight that gives rise to reason of suspicion, so it's not just the officer's hunch that someone's fleeing, but something where the court can look at objective facts and find flight, such as an officer turns on their overhead police lights, and the person, you know, tries to drive around. So your position is he didn't flee? That's correct, Your Honor, not in the sense of, you know, what rises to reason of suspicion, and the reason is... I don't remember that being argued to the district court, that there was no flight at all. Well, I think that what the trial attorney argued was that it didn't rise to the level of flight or speeding. The focus on speeding perhaps isn't the best, most artful use of the word, but I think for reason of suspicion, it's either he was speeding, I clocked him, I paced him, I used my LIDAR, I used my radar, he's speeding, and we don't have an argument, it's over, he's allowed to pull him over for speeding. But what came out of the district court was how the officer's perception of speeding or flight affected his reason of suspicion, and I think when the court looks at the objective facts available to the officer, the corporeality that he testified about, it's not the type of flight where the court has found that it amounts to reason of suspicion. So what happens is, we're on a dark rural road where there's not a lot of lighting because there's new construction going on. The corporal sees the car parked lawfully facing the road, uses his alley light, not his overhead lights, you know, like, hey, stop, just the alley light to look, sees a person in the car, and then the corporal goes down and makes a U-turn, and when he does that, the car's out of view, so he doesn't see how Mr. Pierce gets on the roadway, you know, is he peeling out? Is he running away like the Dickens, you know, the headlong flight that we're talking about? What he sees is by the time he catches up, half a mile, mile down the road, is that it appears to him that Mr. Pierce is going fast, just based on the eyeball test. But that he fled is a factual finding that the district court made, right? We review that for clear error? Well, I think you can review it in the light of the evidence that was presented. I mean, we didn't argue in the opening brief that it was clearly erroneous. I think the way that we viewed it is the district court found that those same facts I just recited to you amounted to flight. You can look at those same facts and determine that it didn't amount to flight that gives rise to suspicion in the DeNovo review. Well, I mean, unless we find that the district court was clearly erroneous in finding that he fled, then we take in our analysis of whether there is reasonable suspicion, one of the factors is flight, right? I think you can look at it in the DeNovo review and say when we apply these facts, which the facts aren't disputed, to the law, it is not flight that gives rise to reasonable suspicion. The officer perceived it as flight, just like he perceived what Mr. Pierce was doing there might have been illegal, but we take issue with that. Well, he also perceived he was speeding. Yes. And isn't that enough to pull him over? I don't think it is in these circumstances. You don't have to have a radar gun. Not necessarily, Your Honor. I think you could be standing on the street and see a car driving by, passing traffic, not consistent with the flow of traffic. As I understand your brief, you concede that you're only challenging the initial stop, you're not challenging the extension of the stop to question the juvenile. That's correct. Okay, so if I think he could have pulled him over for speeding, we're done, right? I think that's right. Okay. And if we think instead that there was enough here for reasonable suspicion, then you agree that you lose? Yes. I mean, we're hanging our hat on the stop itself. It was raised below extending the stop. That was not challenged on appeal. But the court has never held that simply because a police officer thinks someone is speeding, that's enough. The court has always been consistent that you look to the objective facts, and these are very unique facts when we talk about speeding, in the sense of it's more officer hunch, intuition, the types of things that the court has said is not reasonable suspicion, and not specific, articulable facts that we can point to and say any officer or any person or any judge could decide that this person is speeding or going too fast. But the speeding determination was what? It was made based on Corporal Galladay's testimony, based on his training experience in the district court, credited that, right? So it's subject to those standards. I mean, yes. Credibility findings and all of that, right? Sure. But I think any time a police officer says, based on my training and experience, we still have to test the objective facts that the officer is relying on. You know, look at Reed, the DEA case. These DEA agents had a lot of training and experience about when somebody's coming from a source city, where there's cocaine, the fact they're not having suitcases, that they're hiding, the fact that they're traveling with each other, and the United States Supreme Court. That's just not enough. So while a DEA agent can tell us, probably pretty accurately, just like Corporal Galladay, in the end, his hunch paid off, you still have to test the objective facts that these law enforcement officers are relying on to tell you, I think someone is speeding. I think someone is coming from a large area. So you're saying that there was not a sufficient factual basis to support the testimony, even, of speeding? That's right. Not enough to create suspicion. I mean, we take the officer's word. In my training and experience, the person was speeding. But that doesn't mean that it ends there. When you ask, when the officer was questioned, why was the person speeding? What were the facts that you relied upon? Those are the facts, then, that the district court has to decide. Does that amount to resuspicion? My training and experience in pursuing cars that are going in excess of the speed limit, and I observed— I mean, we have cases that say that a layman can testify that someone was speeding. And I think we still test what the layman said, right? So the officer here didn't say, you know, I traveled a certain speed and the vehicle was pulling away from me. I was traveling at—I had to travel one mile to catch up to Mr. Pierce, and it took me X amount of time traveling and Y amount of speed. So that we can—you know, those are the types of things that officers who are trained and with their experience learn to do. They rely on those types of factors to be able to articulate why they thought someone was speeding. And that's where Cpl. Valadie and the district court failed to do, was give us the articulable facts about why you think he's speeding. Not just simply, I turned around and caught up to him and it looked like he was speeding. So if the court then looks at the rest of the facts, and I think it was clear, there's an exchange in the briefing, but I just want to make it clear. We all—the appellant agrees that the district court made its determination based on the totality of the circumstances. And that included—it's 2 a.m. Yes. He's parked on a partial slab at a residential construction site, which is private property. Correct. In a neighborhood that's been targeted for burglaries and on a street where there's been vehicle break-ins. At least there have been reports, yes. Yes, okay. And he saw a person sitting in the ram with the lights turned off and no truck lights on. Once he shined his alley light, yes, he saw what he believed to be a person. Yeah. I mean, you don't think that at that point there was a reasonable—there was a reason for the officer to want to approach him to find out, what are you doing here? The officer testified he thought he was trespassing. And the district court made the same finding, that that was enough to approach him. But my question is, is that enough to stop him, right? And then you add to that, when the officer turns around to come and question him, he fled. Well— And the Supreme Court has said that we can consider flight. It's described as fleeing, but we still have to test— It's a factual finding of fleeing. And I understand that the district court made that finding. I guess the position that we take is that it must be based on objectively reasonable facts. I just want to clarify that because that's an important thing for me to get straight about your argument. You did not challenge, as clearly erroneous, the district court's factual finding that this was flight. Is that correct? You're making a different argument—not a different argument, but you're sort of making an extension of the argument about how we factor that into the totality under our standard of review. But as to that specific question, did you challenge the factual finding? That's not specifically challenged in the open. And I think, going back to our earlier discussion, I think that's where the standard of review, you know, is murky. There's a crossover between, you know, when do we say there's articulable facts that give rise to reasonable suspicion? You know, flight essentially always gives rise to reasonable suspicion. So when a trial court says flight, I submit that this court can look at the facts de novo and decide, is it flight or is it not? I don't think—I don't read the district court's decision as hanging its hat on flight, actually, at all. Do you? No, no. I think the district court was very clear that it was the totality of the circumstances, which included the flight. But I disagree with, you know, an officer always has time to—or always has the right to approach an individual, right? So he sees those situations, he wants to investigate further. He can do that. He doesn't have to have any basis to approach somebody and ask them questions if they're in public. You know, the question is what happens after they do that. But the real question I think we need to ask is, did he have the right to seize Mr. Pierce at that moment, before the driving away or flight or speeding? Did he have the right to seize him at that moment? I think the case law is clear he didn't have that right to seize him at that moment. So then you add— So you're telling us we should ignore the flight? I think— Don't include it in the totality. No, it is included. Okay. It's just a question of does the totality give rise to real suspicion under the case law? And the types of flight in the cases where there is real suspicion is much different than what was presented in the district court law. You rely on Hernandez, right? Yes. And so could you just speak to how that—that seems different to me, but maybe I'm missing something. Sure. I mean, Hernandez is not a flight case, if you will. There was some evasion, I guess, that the court talked about where the officer did approach him and hadn't seized him yet, but was asking questions about where he was coming from. He couldn't give an answer to his grandma's address when he said he was coming from his grandma. So evasion, I think, comes into play in some of these cases when there is the flight. But here you're talking about a construction site where the defendant was walking on or next to. Well, he's outside the fence. In Hernandez, he's not on the construction site. He's in downtown Denver, and he's walking past a fenced construction site. Hadn't, you know— So he's not trespassing. That's right. And importantly, there's no evidence here that Mr. Pierce was trespassed, right? I mean, just because someone's on private property doesn't make them a trespasser, right? And that's the problem with Corporate Holiday's hunch. I mean, he might suspect it. He might have every right to go up and ask the person, do you have a right to be here? But he didn't know that Mr. Pierce was a trespasser. He also suggested in his testimony, didn't he, that he was doing a welfare check. He thought one potential was that the person needed aid, but he didn't provide any facts to help the court gather that. And was the engine smoking? Did the person look ill or have some sort of medical thing going on? You know, did he look in distress? Again, it's just the same hunch that he had about whether he was a trespasser, whether he was there to commit vandalism or theft, whether he was actually speeding away or just driving away. And I see that my time is up. Thank you. May it please the court, Thomas Duncombe for the United States. The government wins this appeal for three reasons. The first is there's a reasonable suspicion for an officer to make a stop. An officer need not articulate a specific crime that he has in mind. It's enough that an officer has reasonable, articulable suspicion that criminal activity may be afoot. That's from this court's previous case. And the Denison case describes it as reasonable suspicion that a person may be engaged in criminal activity. The officer had that here. The second reason is that reasonable suspicion is a low bar. That even though the factors individually may be innocent or may be consistent with innocent conduct, when viewed in their totality, they can give rise to reasonable suspicion. And they did so here. And the third is that finding reasonable suspicion here comports with common sense, both because of the quality of the factors the court had articulated and because of the quantity of factors that he articulated. How do we reconcile your first point with an argument that seems floated in your brief that you don't even need to get to reasonable suspicion, this was consensual, this was a welfare check? So the part that was consensual, that the officer was intending to be consensual, was before the flight. So it was when the officer saw all the things that the district court found, even without the flight, gave rise to reasonable suspicion or would have given rise to reasonable suspicion. The key is that's what the officer was subjectively intending to do. And what matters here is objective reasonable suspicion, not the officer's subjective intentions. But it is true that at that moment, and the officer expressed this at the hearing, his subjective intention was, I'm going to go over there and see if that's someone that needs help. And one specific way he articulated that was, maybe that's a person who had too much to drink and realized they shouldn't be driving, and they pulled off to the side of the road. But the point is, it was a person in a truck, in the dark, on a construction site, in a residential area. The officer was entitled to rely on both his experience, his common sense, and his detailed knowledge of this city and its recent criminal complaints. Is it the government's position that we can affirm without reaching flight as part of the totality inquiry, like the district court seemed not to emphasize that? The court certainly could affirm on all the factors excluding flight. The court need not do that, but the court certainly could do that, because the district court articulated that that was possible. So this is where I'm really stuck. How can that be? How can that be that before the flight, the totality supports reasonable suspicion? Seems like entirely innocent conduct here, no? So each of the facts in isolation could be consistent with innocent conduct, but the court views those factors not in isolation, but in their totality. And here, we have not just that it was a construction site, and it was private property, and it was 2 a.m., but that the officer knew that construction site theft is common, that construction site theft had been reported recently in Jenks, that there had been vehicle burglaries from this street recently, and that there was a person sitting there in the dark at 2 a.m. in this residential area where the officer had never seen a car parked before. Those facts were enough to allow an officer to commit the limited intrusion that would have been conducting a reasonable suspicion stop. However, I do want to clarify, the court did not highlight the flight, at least in the first part of her order, but that does not mean that the court did not view flight as significant. I think what the court was doing was almost a rhetorical device of emphasizing how strong the reasonable suspicion was here. Basically, if you take all these factors, even without the obviously suspicious fleeing from police, that's how the district court articulated it, obviously suspicious, you'd have reasonable suspicion. But wait, there's more. We've got this flight which is unprovoked and which meets the definition of headlong flight from Illinois v. Wardlow because it's— How is that so? This meets the definition of headlong? Yes. How? Because this is ungoverned and evasive behavior. Illinois v. Wardlow talked about unprovoked flight upon noticing the police, and that's what the district court found this was. This was four to six seconds after the officer had shined his light on the ram. The officer was just turning around to approach the vehicle, and the vehicle was already driving off at great speeds and using excessive acceleration. The officer was entitled to use his experience and common sense when the officer determined subjectively, but when the officer determined, this seems suspicious to me, this seems like a person who feels like he's in trouble and doesn't want to encounter the police. And the district court made a factual finding, as my colleague has conceded, that there was flight in this case. And that factual finding is— There's nothing murky about the standard with regard to findings of fact by the district court. They're entitled to deference by this court. This court only overturns them if they're clearly wrongs. And just going back to the first point, it's the facts that have to be specific and articulable, not the crime that has to be specific and articulable. That was a point that counsel made in his reply brief that seemed to suggest that for reasonable suspicion to exist, there has to be a specific crime articulated. Unless there are any further questions, the government would cede the rest of its time. Just one more question for you. The appellant doesn't challenge the scope of detention, right? That's correct. So it's just the stop. So what happened during that time, the details of Mr. Pierce's offense, have absolutely nothing to do with this appeal. Would you agree? I would. Thank you. We'll take it under advisement. Thank you.